IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIANA S. SHARAF and<br>MOHAMMED SHARAF,<br>    Plaintiffs<br><br>v.<br><br>NATIONAL JUDGMENT RECOVERY<br>CENTER, L.P. and MAIN STREET<br>ACQUISITION CORP.,<br>    Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:16-cv-2973<br><br><br>JURY DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Diana S. Sharaf and Mohammed "Mike" Sharaf, Plaintiffs in the above-numbered and styled case, complaining of and against National Judgment Recovery Center, L.P. and Main Street Acquisition Corp., and for cause of action would respectfully state the following:

**I. INTRODUCTION**

1. This is an action for damages brought by Plaintiffs, Diana S. Sharaf and Mohammed "Mike" Sharaf, consumers, alleging that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and the Texas Deceptive Trade Practices Act, Tex. Bus. Com. Code § 17.46 *et seq.* (hereinafter "DTPA"), which prohibits deceptive acts or practices in the conduct of any trade or commerce.

## II. JURISDICTION

2.     Jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and supplemental jurisdiction for the state law claim is afforded by 28 U.S.C. § 1367. Venue in this District is proper in that the Defendants transact business here and/or the conduct complained of occurred here.

## III. PARTIES

3.     Plaintiff, Diana S. Sharaf is an individual residing at 19902 Braecove Circle, Richmond, Texas 77407 and is the wife of Mohammed "Mike" Sharaf.

4.     Plaintiff, Mohammed "Mike" Sharaf (hereinafter "Mike Sharaf") is an individual residing at 19902 Braecove Circle, Richmond, Texas 77407 and is the husband of Diana Sharaf.

5.     Defendant National Judgment Recovery Center, LP (hereinafter "NJRC") is a limited partnership engaged in the business of collecting debts in this state with their principal place of business located at 2200 North Loop West, Suite 200, Houston, Texas 77018.  The principal purpose of Defendant is the collection of debts using the telephone, mail, and litigation, and the Defendant regularly attempts to collect debts alleged to be due another.  Defendant NJRC may be served by serving its registered agent, C T Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201-4234.

6.     Defendant NJRC is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

7.     Defendant Main Street Acquisition Corp. (hereinafter "Main Street") is a corporation engaged in the business of collecting debts in this state with their

principal place of business located at 2877 Paradise Road, Unit 303, Las Vegas, Nevada 89109-5239. The principal purpose of Defendant is the collection of debts using the telephone, mail, and litigation, and the Defendant regularly attempts to collect debts alleged to be due another. Defendant Main Street may be served by serving its registered agent C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

8. Defendant Main Street is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## IV. FACTUAL ALLEGATIONS

9. On or about April 1, 2016, Plaintiffs' joint bank account was frozen due to a garnishment order on a purported judgment, totally unfamiliar to Plaintiffs.

10. Within a few days, Plaintiffs received legal documents in the mail, sent by NJRC, issued at the request of attorney Christopher G. Ayres (hereinafter "Ayres") with the Law Office of Christopher G. Ayres.

11. Having no idea the basis for the garnishment order, Plaintiffs contacted the Law Office of Christopher G. Ayres, the law firm listed on the Notice of Garnishment they received in the mail.

12. Specifically, Mike Sharaf called the Defendants' phone number listed on the notice of garnishment and was told by Defendants, by and through their employee, Delandrian Davis, that he had reached NJRC.

13. Mike Sharaf asked to speak with attorney Ayres, but Defendants explained that talking to Mr. Davis was tantamount to speaking with attorney Ayres.

14. Mike Sharaf pleaded with Defendants to have an opportunity to speak with attorney Ayres, but Defendants refused.

15. Defendants explained that Mr. Davis worked for NJRC and that Ayres, as counsel for Main Street, had hired NJRC to collect on a judgment against Diana Sharaf.

16. Mike Sharaf requested any documents regarding the judgment, but Defendants refused to give him any such documents, instead directing Sharaf to obtain his own copies.

17. In response to Mike Sharaf's phone call, Defendants demanded $10,665.00 in exchange for release of a judgment that resulted in their bank account being frozen and lifting the freeze on the bank account.

18. Mike Sharaf inquired whether Defendants would release the Sharafs' bank account and the purported judgment in exchange for $5,000.00. Defendants immediately rejected Mike Sharaf's offer.

19. At no point did Mr. Davis suggest that he would take Mike Sharaf's settlement offer to judgment-creditor, Main Street.

20. Since the Sharafs still had no knowledge of any judgment, Plaintiffs requested a copy of the underlying court documents from the Justice Court, Precinct 3, Fort Bend County, Texas. The court record includes:

> a. On or about March 25, 2013, Main Street Acquisition Corp., assignee of HSBC Bank Nevada, NA (hereinafter "Main Street"), filed suit against Diana Sharaf in Precinct 3, Fort Bend County, Texas, case number 13-JCV31-12190 (hereinafter "the Main Street

    Matter"). The nature of the suit was the collection of a purported consumer debt.

    b. An Affidavit of Service states that the Petition and First Discovery Requests were delivered to Diana Sharaf at 19902 Braecove Circle, Richmond, Texas 77407 on April 2, 2013.[1]

    c. The suit resulted in a default judgment taken against Diana Sharaf on September 11, 2013.

    d. On or about February 17, 2016, Execution and Citation were issued by the Honorable Kenneth S. Cannata, Precinct 3, Fort Bend County for judgment taken in the Main Street Matter.

21. On or about April 5, 2016, Mike Sharaf again contacted the Defendants, through the Law Office of Christopher G. Ayres, and spoke with Delandrian Davis, a debt collector.

22. During the phone call with Defendants, Mike Sharaf was told that the balance owed on the Main Street Matter judgment was $10,665.00. Defendants stated the balance was the sum of the following items: principle judgment in the amount of $4,306.56, pre-judgment interest in the amount of $2,776.99, court costs of $111.00, and post-judgment interest in the amount of $3,461.29.

23. In calculating the post-judgment interest, Defendants told Mike Sharaf, "Add those two up [the principal amount and the pre-judgment interest] and then you do post-judgment interest [which is] 5%...the post-judgment interest right now is $3,461.29."

---

[1] Diana Sharaf asserts that she was never served in the Main Street Matter.
*Sharaf et. al. vs. National Judgment Recovery Center LP and Main Street Acquisition Corp.*
Plaintiffs' Original Complaint
Page 5 of 11

24. During the same phone call, Defendants also asserted that the lowest acceptable settlement amount was $8,524.00.

25. Additionally, Defendants told Mike Sharaf that if he wanted to settle:

> "That's gonna have to be in the next couple of days because, remember, if your bank's attorneys start to get involved, you're going to have to pay them also [and] they can have a fee from $500.00 to $1,000.00.  If you want to do outside of this and just go make the payment…without it coming out of your bank account so the bank's attorneys don't have to get involved, you can...[pay] $8,524.00."

26. Worried over the threat of increased attorney's fees, Mike Sharaf asked how soon Plaintiffs' bank account would be released in the event that he could meet the settlement demand.  Mr. Davis, on behalf of Defendants, stated, "The bank [account] won't be released that day but ***I can go ahead and do the non-suit*** [of the garnishment], so I'll send them the non-suit and they'll go ahead and release your bank account" (emphasis added).

27. Plaintiffs never received anything in writing from Defendant NJRC advising them of Diana Sharaf's federal right to dispute the purported debt, to request validation of the purported debt, or to receive a copy of the judgment in the Main Street Matter.

28. Specifically, Defendant NJRC failed to send a notice within five days after the initial communication with Plaintiffs that contains: (1) the correct amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if Diana Sharaf notifies the

debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.  *See* 15 U.S.C. § 1692g(a).

29. Due to the anxiety and stress of being unable to access their bank account and out of fear of increased fees, as threatened by Defendants, Plaintiffs hired counsel to represent Diana Sharaf regarding the Main Street Matter.[2]

30. On or about April 7, 2016, Diana Sharaf, through counsel, moved to dissolve the writ of garnishment.

31. On or about April 11, 2016, Main Street agreed to accept $2,500.00 in exchange for a nonsuit with prejudice of the garnishment action and a release of judgment in the Main Street Matter.[3]

32. Plaintiffs' lives and daily routines were disrupted and they suffered economic damages, humiliation, anxiety, and emotional distress because of their inability to resolve the matter themselves and the misrepresentations by the Defendants.

---

[2] Diana Sharaf asserts that she was never served in the underlying matter and disputed the underlying debt.

[3] It took two defective Release of Judgments before Plaintiffs received a correct, non-defective Release of Judgment and all were on NJRC letterhead.

## V.  RESPONDEAT SUPERIOR

33. At all times relevant to this matter, Delandrian Davis and Ayres were employees or agents of Defendants.

34. The acts of Mr. Davis and Ayres fall within the course and scope of their employment with Defendants.

35. Defendants are each liable for the acts and omissions of their employees and agents under the doctrine of *respondeat superior*.

36. As a direct and proximate result of the aforementioned actions, Plaintiffs have suffered the aforementioned damages.

## VI. CLAIM FOR RELIEF UNDER THE
## FAIR DEBT COLLECTION PRACTICES ACT

37. Plaintiffs incorporate paragraphs 1-36 above.

38. Defendant NJRC violated the FDCPA by failing to provide Plaintiffs with notice of their entitlement to a copy of the judgment as well as refusing to give Plaintiffs a copy of the judgment, even after Plaintiffs requested it, in violation of 15 U.S.C. §1692g(a).

39. Defendant NJRC violated the FDCPA by failing to provide Plaintiffs with notices regarding Diana Sharaf's right to dispute the purported judgment debt and request validation, in violation of 15 U.S.C. §1692g(a).

40. Defendants NJRC and Main Street violated the FDCPA by misrepresenting the amount of the debt, in violation of 15 U.S.C. § 169e(2)(A).

41. Defendants violated the FDCPA by falsely implying that a representative was an attorney, in violation of 15 U.S.C § 1692e(3).

42. Defendants violated the FDCPA by insisting that failure to make an immediate payment would result in bank fees and attorney's fees, in violation of 15 U.S.C. § 1692e(4).

43. Defendants violated the FDCPA by misrepresenting that the stated settlement amount was the lowest amount that would allow Plaintiffs to resume access to their property, in violation of 15 U.S.C § 1692e(10).

44. Defendants violated the FDCPA by falsely purporting to have knowledge or authority as to the amount of fees to be charged by bank's attorneys, in violation of 15 U.S.C. § 1692e(10).

45. Defendants violated the FDCPA by using unfair or unconscionable means to attempt to collect debt, namely Mr. Davis not relaying Mike Sharaf's settlement offer to his supposed client and holding himself out as an attorney, in violation of 15 U.S.C. § 1692f.

46. Defendants violated the FDCPA by attempting to collect an amount that was not expressly authorized by the agreement creating the debt, in violation of 15 U.S.C. § 1692f(1).

47. Defendants violated the FDCPA by using language other than Defendants' address on the envelope mailed to Plaintiffs, in violation of 15 U.S.C. § 1692f(8).

48. As a result of these violations of the FDCPA, Defendants are liable to the Plaintiffs for actual damages, statutory damages, attorney's fees and costs.

## VII.  CLAIM FOR RELIEF UNDER THE
## TEXAS DECEPTIVE TRADE PRACTICES ACT

49. Plaintiffs incorporate paragraphs 1-36 above.

50. Defendants violated the DTPA by committing false, misleading, and deceptive acts in the conduct of commerce, namely misrepresenting the amount owed, misrepresenting the debt collector as an attorney, misrepresenting the settlement amount, and falsely claiming to have knowledge as to fees charged by bank's attorneys, in violation of Tex Bus. & Com. Code § 17.46 *et seq*.

51. As a result of these violations of the DTPA, Defendants are liable to Plaintiffs for a declaratory judgment that Defendants' conduct violated the DTPA, actual damages, attorney's fees and costs. Tex. Bus. & Com. Code § 17.50. Furthermore, because the Defendants acted knowingly and intentionally, Plaintiffs are entitled to additional damages under the DTPA. Tex. Bus. & Com. Code § 17.50(b)(1).

## VIII.  JURY DEMAND

52. Plaintiffs demand a jury trial.

## IX.  PRAYER

WHEREFORE, Plaintiffs respectfully pray that judgment be entered against the Defendants for the following:

A. Declaratory judgment that the Defendants' conduct violated the DTPA and constitutes fraud;

B. Actual damages pursuant to 15 U.S.C. § 1692k(a)1 and Tex. Bus. & Com. Code § 17.50(b)(1);

C. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

D. Damages for mental anguish pursuant to Tex. Bus. & Com. Code § 17.50(b)(1);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) and Tex. Bus. & Com. Code § 17.50(d); and

F. Such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Dana Karni
KARNI LAW FIRM, P.C.
State Bar No. 24044379
SDTX Bar No. 592484
4635 Southwest Freeway
Suite 645
Houston, Texas 77027
Telephone: 713-552-0008
Facsimile: 713-454-7247
Dana@KarniLawFirm.com
ATTORNEY FOR PLAINTIFFS